93        79
25 SC ³506

## Bisbing *versus* The Third National Bank.

1. Where the plaintiff in an execution, in good faith sells the personal property of the defendant in order to protect himself and acquire a good title to the property, he may leave the goods in the possession of the defendant without thereby making them subject to the latter's debts. A change of possession is not necessary to give validity to a judicial sale.

2. Goods were thus left, after a sale, with the defendant in an execution, with the understanding that they might be repurchased upon payment of the amount of the judgment. There was no evidence of any fraudulent understanding prior to the sale. *Held,* that they could not be seized in execution and sold by a subsequent judgment-creditor.

3. The omission of the court to charge upon a particular point, for which there is no request, is not assignable for error, yet if the language of the court, taken in connection with the circumstances of the case, may have misled the jury as to the law, or if the tendency of the charge was to mislead them, it is ground for reversal.

January 14th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county:* Of January Term 1880, No. 19.

Feigned issue, wherein John M. Bisbing was plaintiff and the Third National Bank defendant.

On October 5th 1876, Bisbing purchased at sheriff's sale, made by virtue of an execution issued by him on his own judgment, against the firm of James E. Packer & Sons, certain goods for $211. His judgment was for some five hundred and odd dollars, cash loaned. After the sale he did not remove the property, which consisted of machinery in a small machine shop, but allowed the Packers the use of it, so they might earn money to pay him back. Sometime after the present defendants, the Third National Bank, levied upon the same goods, upon which Bisbing claimed them, a sheriff's interpleader was framed, and James Miller became surety upon the claimant, Bisbing's bond. Subsequently, difficulties again arising in Packers' business, Bisbing sold these goods at auction for $800, and the money was placed in Miller's hands to indemnify him on his bond. Miller, however, paid over to Bisbing

[Bisbing *v.* Third National Bank.]

$430, and he relinquished his claim to the remaining $370 in favor of the Packers.

At the trial, before Hare, P. J., the plaintiff offered in evidence the record of the judgment of Bisbing *v.* Packer & Sons, and called Bisbing, who testified, "I am the plaintiff in this case; I owned these goods; I purchased them at sheriff's sale of Packer & Sons for $211, and received a bill of sale from the sheriff. The note on which the sale was had was given in 1874 for $500. I entered up the judgment because I saw the Packers were going down hill. I issued execution and sold them out to protect myself. I left the goods there for them to use, the understanding being that they might buy them back if they could, that is, if they could pay me what was actually due me on the note, but they were unable to do so. There was due me on the note a little over $400 and some interest. Packer & Sons had paid me $100 on the note before I entered judgment. The goods, subsequently to this interpleader, were sold at auction on my account. They brought $800, which was paid to Miller, my surety in this interpleader. Miller paid me the balance due me on my note, $430 in full. I have no claim on the $370 remaining in his hands; it is the Packers'. If this case goes in my favor, it is to go back to the Packers as their money. All the goods purchased by me were not sold at the auction; some of them had been previously sold at private sale. I cannot tell how much was realized for them. Packer & Sons got the money."

The court charged the jury as follows: "If the arrangement under which the sale took place was that the property should remain in the hands of Packer & Sons, with a right on their part to pay it back, on payment of balance due to plaintiff, that would be a right of property or ownership which they might enforce against the plaintiff, and which might also be enforced by their other creditors. And the jury should render a verdict for the defendants."

After consultation, the court instructed the jury, who had proposed to render a verdict for $370, that "the jury shall proceed to render a verdict under the instructions already given."

The verdict was for defendant, when plaintiff took this writ and alleged that the court erred in the above charge to the jury, and in not directing a verdict for plaintiff.

*E. M. Hunt*, for plaintiff in error.—The charge did not state the law correctly. There was no evidence that Bisbing bought with any understanding with the Packers. The evidence was that after the purchase he left the goods for them to use. The inference is that such leaving was an act of benevolence, and the law does not repel such charity by any presumption of fraud: Maynes *v.* Atwater, 7 Norris 496. The court erred, therefore, in

[Bisbing v. Third National Bank.]

saying that there was a right of property, an equity of redemption, so to speak, that the debtor or his other creditors could enforce.

The language of the court also tended to mislead the jury: Kissinger v. Thompson, 12 S. & R. 44; Hersheaur v. Hocker, 9 Watts 455; Relf v. Rapp, 3 W. & S. 21; Wenger v. Barnhart, 5 P. F. Smith 303; Gregg Township v. Jamison, 5 Id. 468; Railroad Co. v. Berry, 18 Id. 272; Stall v. Meek, 20 Id. 181.

*Francis A. Osbourne* and *George P. Rich,* for defendant in error.—Under all the evidence in the case, not merely what was said but was done by the parties, the conclusion is irresistible, that either this sheriff's sale was, from its inception, a fraud, or else that at the time of our levy on these goods, there was in defendants some right of redemption, which they could have enforced against plaintiff, and *a fortiori* which their creditors could enforce, and so the jury have found: Scholt v. Chancellor, 8 Harris 195. Of the case of Mayne v. Atwater, relied upon by the plaintiff, it is sufficient to say that that was a case of a compulsory nonsuit, and it was held to be error, because the question of intention with which the plaintiff had left his goods in the debtor's possession should have been submitted to the jury.

Mr. Justice MERCUR delivered the opinion of the court, May 3d 1880.

This issue was to determine the ownership of certain personal property. It had previously been sold on execution in favor of the plaintiff in error, as the property of Packer & Sons, and purchased by him. After his purchase he suffered the goods to remain in possession of the former owners. The defendant in error subsequently levied on the same goods as the property of Packer & Sons. On the trial of the issue the plaintiff was the only witness sworn. It appeared by the record evidence, and by his testimony, that all the forms of law, requisite to make a valid sale, were observed. That portion of his evidence which appears to have controlled the opinion of the court was in these words, "I issued execution and sold them out to protect myself. I left the goods for them to use, the understanding being that they might buy them back if they could, that is if they could pay me what was actually due me on the note; but they were unable to do so."

Two questions arise under this evidence. The one the object in making the sale; the other the arrangement under which the goods remained in possession of Packer & Sons. The plaintiff had an undoubted right to sell for the purpose of protecting himself, and for a like purpose to buy at the sale and acquire a good title to the property. If he did thus acquire such a title, he might leave the goods in the possession of the former owners without thereby making the property subject to their debts. A change

[Bisbing *v.* Third National Bank.]

of possession is not necessary to give validity to a judicial sale: Myers *v.* Harvey, 2 P. & W. 478; Craig's Appeal, 27 P. F. Smith 448; Lothrop *v.* Wightman, 5 Wright 297. The witness does not testify that there was any understanding, prior to the sale, by which he was to purchase the goods, or leave them in possession of the former owners; nor that they, after the sale, agreed to purchase. It was a mere offer to sell on terms which they were unable to accept. The charge of the court is very brief. It wholly omits to call the attention of the jury to the difference between an arrangement made after the sale, and one made before it. It is true, the mere omission to charge upon a particular point for which there was no request is not assignable for error, yet, if the language of the court taken in connection with the circumstances of the case may have misled the jury as to the law, or if the tendency of the charge was to mislead them, it is ground for reversal: Railroad Co. *v.* Berry, 18 P. F. Smith 272; Stall *v.* Meek, 20 Id. 181; Fire Ins. Co. *v.* Rosenberger, 3 W. N. C. 16. In the hurry of the trial the learned judge appears to have ignored the view that the arrangement under which the goods were left might have been made after the sale, and impliedly appears to have assumed that it was prior. As a whole, we think the charge was inadequate, and calculated to mislead the jury from the true point of inquiry.

Judgment reversed, and a *venire facias de novo* awarded.